UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————

DOUGLAS D. MAULT, JR.,

                Plaintiff,

      -vs-                     **No. 1:14-CV-00751 (MAT)**
                                             **DECISION AND ORDER**
CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,
                Defendant.

———————————————————

## I.   Introduction

Represented by counsel, Douglas D. Mault, Jr. ("plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, plaintiff's motion is granted to the extent that this case is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

## II.  Procedural History

The record reveals that in May 2011, plaintiff (d/o/b July 4, 1979) applied for DIB and SSI, alleging disability as of May 18, 2010. After his applications were denied, plaintiff requested a

hearing, which was held before administrative law judge Eric L. Glazer ("the ALJ") on December 6, 2012. The ALJ issued an unfavorable decision on January 14, 2013. The Appeals Council denied review of that decision and this timely action followed.

## III. Summary of the Record

The record reveals that plaintiff suffered a work-related lower back injury on April 5, 2010. At the time, plaintiff worked as a stock department manager at Walmart, but he was fired from his job on approximately May 18, 2010. The record indicates that plaintiff was fired because he was unable to perform his required job duties subsequent to his injury.[1] Plaintiff treated with Dr. Steven Celotto, a neurologist, in the aftermath of the injury until approximately December 2010. Dr. Celotto consistently noted a 100% disability during his treatment of plaintiff.

Plaintiff was referred for pain management by his primary treating physician, Dr. Juliette Nwachukwu, and began treating with neurological pain specialist Dr. Eugene Gosy in February 2011. Dr. Gosy consistently noted that plaintiff had an antalgic gait on the left side. In the first few months of his treatment with Dr. Gosy, plaintiff demonstrated mild tenderness at L5 bilaterally, absent lumbar retroflexion, and anteflexion at 30 degrees. In treatment through April 2012, plaintiff was consistently noted to

---

[1] Specifically, a treatment note dated November 23, 2011, indicates that plaintiff confirmed to Dr. Gosy that he "[had] been fired from his position as he [was] not able to return to his previous duties," which involved lifting and carrying, activities which resulted in his original injury. See T. 376.

have negative straight leg raise ("SLR") tests and full or near-full strength of the upper and lower extremities. Earlier treatment notes indicated that plaintiff struggled with daily activities, while more recent notes stated that he was able to maintain his activities of daily living. Plaintiff did report to Dr. Gosy, however, that his pain levels were exacerbated quickly when he attempted to assist his wife with household tasks.

Dr. Gosy noted that an EMG study completed December 30, 2010 showed radiculopathy at L4-L5 and L5-S1. Additionally, an MRI of the lumbar spine performed May 3, 2010 indicated mild bulges without stenosis at L2-3, L3-4, and L5-S1, as well as a "mild bulge with a slight left lateral component [at L4-5" . . . [with no obvious effacement of the left L4 nerve root" and "mild facet arthropathy" with no stenosis. T. 187. Plaintiff underwent epidural injections for pain, which he reported did not improve his pain. In August 2011, Dr. Gosy noted that after plaintiff received a facet block injection, he "developed spasms for a period of 10 days associated with hypersensitivity." T. 383.

Throughout his treatment of plaintiff, Dr. Gosy noted that plaintiff's complaints were consistent with his history of injury and consistent with Dr. Gosy's objective findings. Dr. Gosy consistently rated plaintiff at 66% temporary impairment. Dr. Gosy's most recent treatment note, dated April 26, 2012, stated that plaintiff's "pain patterns remained unchanged," his pain was

"exacerbated with activity and improved with rest," and his "combination of medications [which included narcotic pain medication, muscle relaxant medication, and anticonvulsant medication] [was] helpful in reducing his pain to a level of 2-5/10 with rest." T. 365. Dr. Gosy noted that plaintiff "ambulate[d] slowly with a mildly antalgic gait with straight cane assist," lumbar lordosis was diminished and plaintiff wore a hard plastic lumbar brace, and plaintiff's skin demonstrated "hypersensitivity without any skin changes of the lumbar region." T. 367.

Also on April 26, 2012, nurse practitioner ("NP") Christine Moley, who worked with Dr. Gosy, completed a form indicating that plaintiff had the following work restrictions: he could not stand or walk for longer than 30 minutes at a time; he could not sit for more than 30 minutes at a time; he could not lift greater than 20 pounds; and he was restricted to "[l]ite duty work only." T. 364. Those same restrictions were also stated in Dr. Gosy's treatment note of the same date, and Dr. Gosy noted that the restrictions would be in effect "indefinitely." T. 367.

On July 13, 2011, Dr. Samuel Balderman completed a consulting internal medicine examination at the request of the state agency. Dr. Balderman noted that plaintiff's gait was normal, he appeared to be in no acute distress, he could not walk on heels or toes "due to pain," squat was 10% of full, stance was normal, plaintiff used no assistive devices, and he needed no help changing or moving on

or off the examination table. On physical examination, Dr. Balderman noted limited range of motion ("ROM") of the lumbar spine with flexion to 20 degrees and paraspinal tenderness "to extremely light touch," but otherwise unremarkable findings. Dr. Gosy opined that plaintiff had "mild limitation in bending and lifting," noting that his "MRI report should be reviewed for clinical correlation," and finding that plaintiff "show[ed] symptom magnification [i.e., exaggeration of complaints] during [the] evaluation." T. 315.

On February 13, 2012, Dr. Patrick Hughes performed an independent medical examination ("IME") of plaintiff for workers compensation purposes. Dr. Hughes noted normal strength, negative SLR test bilaterally, and hypalgesia (decreased sensitivity to painful stimuli due to interruption of the nerve path) of the left foot to the mid tibia. Dr. Hughes opined that plaintiff had a "moderate 50% partial disability," had reached maximum medical improvement ("MMI") for purposes of workers compensation, and could return to light duty with "[n]o sitting, standing, or walking for more than 30 minutes at a time or lifting more than 20 pounds." T. 398. Two earlier IMEs, completed in July 2010 and January 2011 by Dr. John Ring and Dr. Melvin Brothman, respectively, found marked temporary or partial disability. Both of these physicians restricted plaintiff to sedentary work on a temporary basis.

## IV.   The ALJ's Decision

Initially, the ALJ found that plaintiff met the insured status requirements of the Social Security Act through December 31, 2015. At step one of the five-step sequential evaluation, see 20 C.F.R. §§ 404.1520, 416.920, the ALJ determined that plaintiff had not engaged in substantial gainful activity since May 18, 2010, the alleged onset date. At step two, the ALJ found that plaintiff suffered from the severe impairments of degenerative disc disease of the lumbar and cervical spines, degenerative changes of the hip, and chronic obstructive pulmonary disorder ("COPD"). At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any listed impairment.

Before proceeding to step four, the ALJ determined that, considering all of plaintiff's impairments, plaintiff retained the RFC to perform the full range of light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b). At step four, the ALJ found that plaintiff could perform past relevant work as a manager of a retail store. Accordingly, the ALJ found plaintiff not disabled and did not proceed to step five.

## V.   Discussion

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); see also Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000).

### A.   Weight Given to Medical Source Opinions

Plaintiff argues that the ALJ failed to properly weigh consulting opinions of Drs. Balderman, Ring, Brothman, and Hughes. Speifically, plaintiff contends that the ALJ erred in giving significant weight to Dr. Balderman's opinion while giving little weight to each of the independent examining physicians' opinions.

An ALJ is required to evaluate "every medical opinion [he] receive[s,]" "[r]egardless of its source." 20 C.F.R. §§ 404.1527(c); 416.927(c). The regulations direct ALJs to consider the following factors in deciding the weight given to each medical opinion: (1) examining relationship; (2) treatment relationship; (3) supportability (i.e., the relevant evidence provided to support an opinion, "particularly medical signs and laboratory findings"); (4) consistency with the record as a whole; (5) specialization; and (6) other factors brought to the attention of the ALJ "which tend to support or contradict the opinion." Id. §§ 404.1527(c)(3), 416.927(c)(3).

The ALJ gave "significant weight" to Dr. Balderman's opinion, "because [Dr. Balderman] had the opportunity to examine the claimant in his area of expertise (i.e. spine surgery)." T. 20. Additionally, the ALJ reasoned, "he provided specific findings in support of his opinion and his opinion [was] consistent with the overall evidence and with the adopted [RFC]." Id. The ALJ gave

"little weight" to the opinions of Drs. Ring, Brothman, and Hughes, because they were examining, not treating, physicians; plaintiff's "treatment with Dr. Gosy reveals that his condition improved; the doctors were not experts in Social Security; they "did not have the opportunity to review all the objective medical evidence in the record"; "their opinions [were] inconsistent with the established [RFC]"; and their opinions as to disability status were an issue reserved to the Commissioner. T. 21.

Upon a review of the record in this case, the Court finds that the ALJ did not properly apply the regulatory factors in weighing the medical opinions. As a result, the Court is unable to understand the ALJ's rationale for reaching his RFC determination, which significantly did not include any limitation on sitting or standing. See Mason v. Barnhart, 96 F. App'x 30, 31-32 (2d Cir. 2004) (remanding where the Court was "unable to discern 'the ALJ's rationale in relation to the evidence in the record without further findings or clearer explanation for the decision'") (quoting Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996) (internal quotation marks omitted)). Specifically, the Court finds that the ALJ did not properly weigh Dr. Balderman's opinion relative to that of Dr. Hughes, who opined in February 2012 that plaintiff could return to light work, but only with certain limitations on sitting and standing. The Court focuses on Dr. Hughes' February 2012 opinion because it was the most recent of the consulting opinions, and it reflected improvement from an earlier examination also performed by

Dr. Hughs in June 2010, at which time he, like Drs. Ring and Brothman, restricted plaintiff to sedentary work.

Initially, the ALJ erred in stating that Dr. Balderman was a spinal surgeon. As plaintiff points out, a reference to public record reveals that Dr. Balderman's specialty is cardiology, and in any event he performed a consulting internal medicine examination. Dr. Hughes' specialty, on the other hand, is neurology. Therefore, this regulatory factor did not weigh in Dr. Balderman's favor, but it did weigh in Dr. Hughes' favor. As to the second reason given by the ALJ for giving significant weight to Dr. Balderman's opinion, the Court does not disagree with the ALJ that Dr. Balderman provided specific findings for his opinion, although the Court notes that Dr. Balderman's report indicates that he had not correlated imaging testing with his functional assessment.

The third reason that the ALJ gave for giving significant weight to Dr. Balderman's opinion was that his opinion was "consistent with the overall evidence." T. 20. The overall evidence, however, indicated that plaintiff continued to treat for "intractable mixed mechanical and neuropathic pain" even as of the date of Dr. Gosy's most recent treatment note. T. 365. Dr. Gosy noted throughout plaintiff's treatment that his claimed symptoms were consistent with his injury, in contrast to Dr. Balderman's finding that plaintiff magnified his symptoms during exam.

Moreover, Dr. Gosy continued to prescribe plaintiff a variety of pain management medications. Although the ALJ found that plaintiff told Dr. Gosy that he "found improvement in his pain"

with the medication, see T. 19, that finding does not present a complete picture of the evidence in the record, which indicates that even in April 2012 plaintiff reported improvement of pain to "2-5/10 *with rest*." T. 365 (emphasis added). Throughout Dr. Gosy's treatment notes, he recorded that plaintiff's symptoms were exacerbated with activity. Additionally, Dr. Gosy and his nurse practitioner opined in April 2012 that plaintiff could return to light work but only with a generous sit/stand option. The ALJ gave no explanation of how or why he determined that Dr. Balderman's opinion was consistent with the record as a whole, and upon a review of the record, the Court finds that it was not. Therefore, it is apparent that the ALJ did not properly apply this factor in weighing Dr. Balderman's opinion.

The final reason the ALJ gave for the weight given to Dr. Balderman's opinion was that it was "consistent . . . with the adopted [RFC]." T. 20. The ALJ cannot support a decision regarding weight with a reference to an already-determined RFC. See Faherty v. Astrue, 2013 WL 1290953, *14 (E.D.N.Y. Mar.28, 2013) ("The ALJ explained the reason for giving [a physician's] medical source statement significant weight was that it was consistent with her RFC. Such reasoning is circular and flawed. The ALJ should use medical opinions to determine [p]laintiff's RFC, and, therefore, cannot give medical opinions weight based on their consistency with the RFC.") (internal citation to record omitted)).

Moreover, such circular reasoning fails where the RFC finding is not supported by substantial evidence in the first place. Cf.

Slattery v. Colvin, 111 F. Supp. 3d 360, 374 (W.D.N.Y. 2015) (reasoning that although the ALJ did not "explicitly state how he arrived at [the] conclusion [that the medical opinions were consistent with the RFC finding], there [was] substantial evidence in the record to support it"). Here, the ALJ failed to identify the evidence in support of his RFC finding that plaintiff could perform a full range of light work with no restrictions on sitting or standing, while ignoring medical opinion evidence that plaintiff needed a sit/stand option. Thus, although it is not the Court's position to "reweigh the evidence," see Krull v. Colvin, 2016 WL 5417289, *1 (2d Cir. Sept. 27, 2016), in this case the RFC was not supported by substantial evidence. See Strange v. Comm'r of Soc. Sec., 2014 WL 4637093, *9 (N.D.N.Y. Sept. 16, 2014) ("'Cherry picked' decisions do not satisfy substantial evidence standards because reviewing courts cannot conclude . . . that adverse findings were based on evidence reasonable minds might accept as adequate to support a conclusion.").

The first reason given by the ALJ for rejecting the IME consulting opinions was that they were examining, not treating, physicians. While this is true, the record as a whole indicates that Dr. Hughes' February 2012 opinion was totally consistent with treating physician Dr. Gosy's April 2012 opinion. Although plaintiff has not raised the issue of the ALJ's failure to weigh NP Moley's April 26, 2012 opinion, plaintiff does argue that the identical functional capacity assessment, issued by Dr. Hughes in February 2012, should have been given greater weight. It is

significant that NP Moley and treating physician Dr. Cosy agreed with Dr. Hugh's opinion, because such agreement indicates that Dr. Hugh's opinion was more consistent with the record as a whole, which consisted in large part of Dr. Gosy's treatment notes. Dr. Balderman's opinion, which did not assign any limitations regarding sitting and standing, was inconsistent with every other medical opinion in the record.

The second reason the ALJ gave for rejecting the IME consulting opinions was that plaintiff's "treatment with Dr. Gosy reveals that his condition improved." T. 21. As discussed above, the Court finds that the record did not clearly indicate such an improvement in plaintiff's condition. The ALJ's summary of Dr. Gosy's treatment notes indicates a picking and choosing of evidence consistent with a nondisability determination, with a corresponding failure to consider Dr. Gosy's notes that plaintiff's complaints of pain were consistent with his injury and that his pain improved with medication but only while he was at rest. See, e.g., Anderson v. Astrue, 2009 WL 2824584, *10 (E.D.N.Y. Aug. 28, 2009) ("It is not proper for the ALJ to simply pick and choose from the transcript only such evidence that supports his determination, without affording consideration to evidence supporting the plaintiff's claims.") (internal quotation marks and citation omitted). Moreover, the ALJ failed to consider Dr. Gosy's and his nurse practitioner's assessment that plaintiff could not sit, stand, or walk for more than 30 minutes at a time. While this assessment may have reflected an improvement from plaintiff's

condition upon first treating with Dr. Gosy, it is not consistent with the ALJ's finding that plaintiff improved to the extent that he could perform unrestricted light work.

As to the ALJ's finding that the IME physicians did not have the opportunity to review "all of the objective medical evidence in the record," the IMEs indicate that those consulting doctors did review relevant portions of plaintiff's medical record in coming to their conclusions. Dr. Hughes' February 2012 opinion, for example, indicates that he reviewed records from July through November 2011, including records from Dr. Gosy. It does not appear, however, that Dr. Balderman had the benefit of plaintiff's full record, as he indicated that plaintiff's "MRI report should be reviewed for clinical correlation." T. 315. Additionally, Dr. Balderman's opinion does not note that he reviewed any of plaintiff's medical records in reaching his conclusions.

The ALJ's remaining reasons for rejecting the IME consulting opinions – that the doctors were not experts in Social Security, their opinions were inconsistent with the "established [RFC], and their opinions were on issues reserved to the Commissioner – do not provide much support for his ultimate decision to give all of these opinions little weight. As discussed above, the ALJ's circular reasoning regarding his RFC finding fails; in any event, the Court has found that the RFC was not supported by substantial evidence. And although it is true that determinations of disability are reserved to the Commissioner, the consulting IME physicians not only opined as to degree of disability for workers compensation

purposes, but also provided assessments of plaintiff's functional capacity that should have informed the overall RFC determination. As for the ALJ's reasoning that the doctors were not familiar with the Social Security disability process, this factor alone, in the absence of other valid reasons, is not enough to discredit the opinions entirely.

Accordingly, the Court finds that the ALJ failed to properly apply the regulatory factors in weighing the medical opinion evidence, and that he instead cherry picked evidence supporting a finding of non-disability. On remand, the ALJ is directed to weigh all of the medical opinion evidence with specific reference to the regulatory factors. Additionally, the ALJ must provide a function-by-function assessment explaining how his RFC finding on remand is supported by evidence in the record. If necessary, the ALJ is directed to consult a VE for determination of the issue of whether plaintiff can perform past relevant or other work existing in the national economy.

### B.   Credibility

Plaintiff contends that the ALJ failed to properly evaluate plaintiff's subjective complaints of pain, and rendered an improper credibility determination. Specifically, plaintiff argues that the credibility finding reflects an impermissible bias against him. For the reasons that follow, the Court agrees.

The ALJ found that plaintiff's "allegations undermined his credibility," reasoning that plaintiff's statements regarding his disability were internally inconsistent and inconsistent with the

evidence of record. Several examples indicate that the ALJ cherry picked portions of the evidence that supported his credibility finding, while ignoring evidence that did not support it. For example, the ALJ found that plaintiff's Function Report was inconsistent with his testimony that his pain was exacerbated while bending, walking, and driving, because in the Function Report plaintiff reported that he "drove a car and that he could go shopping every two weeks for up to three hours. He also reported that he could feed by himself, use the toilet, and prepare simple meals." T. 17.

A review of the Function Report, however, indicates that the ALJ's assessment was left out critical details of plaintiff's reports. In the Function Report, plaintiff indicated that his wife made all the meals and if he prepared food it was a "microwave [meal] or sandwich"; his wife did all the house and yard work; and he could not do any tasks around the house "[b]ecause of the pain it cause[d]." T. 152. Moreover, while plaintiff reported that he went shopping every two weeks, he stated that he went for "1/2 hour to an hour sometimes almost 3 hours *depending on pain*." T. 153 (emphasis added). Additionally, although plaintiff noted that he shaved, he reported that it took him three hours to do so.

Therefore, it appears to the Court that the ALJ ignored the evidence in support of plaintiff's complaints of pain and misstated plaintiff's actual reports. The fact that plaintiff could "feed himself" and "use the toilet" does not translate into an ability to perform the functions of full-time work. See Snyder v. Barnhart,

15

212 F. Supp. 2d 172, 179 (W.D.N.Y. 2002) ("Although a plaintiff's daily activities are relevant in evaluating her complaints of pain, . . . a plaintiff need not be an invalid to be found disabled under the Social Security Act.") (citing Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998) (internal quotation marks omitted)).

The ALJ also found that plaintiff "testified that he stopped working because of his lumbar condition; however, the progress notes from his treating neurologist [Dr. Gosy] reveal that he was fired." T. 17. The ALJ cited one treatment record in support of this finding. A review of Dr. Gosy's full treatment notes, however, indicates that plaintiff reported to Dr. Gosy, as he did to the ALJ at the hearing, that he was fired from his job because he could not perform essential job duties (i.e., lifting and carrying to the extent necessary). The ALJ's statement, at best, indicates that he did not thoroughly review the record, and at worst, indicates an impermissible bias against plaintiff.

Additionally, as plaintiff points out, certain statements by the ALJ at plaintiff's hearing indicate bias against granting his application. After questioning plaintiff about his medications and physical limitations with regard to sitting and standing, the following exchange took place between the ALJ and plaintiff:

Q.   . . . How about walking? How long or how far could you, can you walk?

A.   I have a handicapped sticker that says no longer than 20 feet, but –

Q.   How did you get [that]? . . .

A.   Through Dr. [Gosy].

Q.   Okay. So, so he's the pain doc.

A.   Yes.

Q.   And he, he just, he thought you couldn't walk more than about that, then?

A.   Yes.

Q.   One thing that bothers me, Mr. Mault, is that your, your [imaging] is not that severe for the kind of pain you're claiming. I mean, I'm looking at your MRIs and all of your things. You're on some pretty heavy medications.

A.   Yes.

Q.   And I'm concerned that's what happened is you – I don't really have the authority to grant benefits if I don't feel you've got enough objective findings . . . But that bothers me, and the fact that you're on so much pain medication, and you know, it's not that evident to me that it should be causing the degree of limitation that you're getting. And you are a very young individual. . . . [Y]ou're very young to be thinking you're disabled for the rest of your life. And I, I certainly want to get a little more into your daily activities. I mean, if you're moving around a little, it might even be better than moving around less, although I'm not a doctor, I don't hold myself out to be. . . .

t. 36-37. These statements by the ALJ suggest that the ALJ thought plaintiff too young to be disabled and questioned whether he was taking too much pain medication, despite the fact that the medications were prescribed by a pain management doctor. The ALJ also seemed to express incredulity when plaintiff stated he used a handicap parking permit enabling him to park within 20 feet of businesses. In short, the Court agrees with plaintiff's assessment that the ALJ appeared biased at the hearing.

For these reasons, the ALJ's credibility assessment therefore reflected an improper bias and citation of evidence in support of

a finding of non-disability, while evidence favoring plaintiff's claim was ignored. Accordingly, the Court finds that the ALJ's credibility determination was improper. On remand, the ALJ is directed to reassess plaintiff's credibility according to the proper legal standards. See 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p.

## VI.   Conclusion

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Doc. 14) is denied and plaintiff's motion (Doc. 10) is granted to the extent that this matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.  The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**


**S/Michael A. Telesca**
HON. MICHAEL A. TELESCA
United States District Judge

Dated:    March 24, 2017
          Rochester, New York.